ROBERT S. EWING

v.

ALEXANDER C. BAILEY.

*Master and Servant—Wages—Recovery of—Evidence—Witness—Religious Belief.*

1. In an action for wages under a contract of hiring, this court declines to interfere with the finding for the defendant.

2. In an action on a verbal contract, a memorandum made by one of the parties and read to the other, at the time the contract was made, is admissible as tending to show what the contract was, and also as part of the *res gestæ*.

3. A person's religious belief or unbelief can not render him incompetent as a witness.

[Opinion filed May 28, 1890.]

APPEAL from the County Court of Stark County; the Hon. MILES A. FULLER, Judge, presiding.

Mr. FRANK A. KERNS, for appellant.

Mr. W. W. WRIGHT, for appellee.

LACEY, J. This suit was commenced by appellant against appellee before a justice of the peace and there tried, resulting in a judgment in favor of appellant for $36, from which appellee appealed to the County Court, in which a jury was waived, and a trial by the judge resulted in a finding for appellee and judgment against appellant for costs, from which an appeal is taken to this court.

The suit was based on an alleged agreement between the parties by which appellant was to do work on a farm for appellee from October 15, 1888, to March 1, 1889, at $20 per month. The appellant agreed to take his pay in a horse valued at $75, less a saddle valued at $20, which horse the appellee then sold to appellant, and at the same time appellant sold the saddle to appellee. The balance of the pay for the labor was to be in money. The appellee denied the contract as alleged as to the length of time appellant was to work, insisting he was only to work long enough to pay the difference between the horse and saddle, or $55.

The only dispute was as to the length of time the appellant was to work. After the appellant had worked three and one-fourth months, the latter discharged him and paid him in full up to that time. This suit is brought to recover for the balance of the time not fulfilled up to the first of March, 1889, after giving credit for $9, which the appellant had earned elsewhere in the meantime, leaving a balance claimed of $36 for unworked time. We have examined the evidence carefully as well as read the arguments of the counsel on either side and find that the evidence is very conflicting, the appellee swearing that the time was not fixed, only the appellant was to work for $20 per month, in which he was corroborated by a memorandum in writing kept in appellee's book, which, as he swears, was made at the time and read over to appellant and which did not fix the time the contract was to continue. On the other hand appellant denied that the contract was read over to him in the form found in the book, but as read, specified the time as he contends.

He also testified to the contract as alleged, and in this he was corroborated by the evidence of the two witnesses whom

he introduced, who testified to admissions of the appellee to the effect that the contract ran to March 1, 1889. These admissions were denied by appellee either fully or partially. The court found on the evidence in favor of appellee, and we are not prepared to say that the weight of the evidence is so manifestly against the finding that we ought to reverse for error in that particular. It was a fair question for the court and we think its finding ought to be conclusive as to the question of fact.

It is objected on the part of the appellant that the memorandum was improperly admitted in evidence. We think not. It was evidence tending to prove what transpired, or so alleged by appellee, at the time the contract was made, and was a memorandum, though not signed, which appellee claimed contained the basis of the contract and was assented to by appellant. While such memorandum may not have all the binding effect of a contract, yet it is entitled to very great weight, and is certainly admissible in evidence.

It was also a part of the *res gestœ*. Purington v. Akhurst, 74 Ill. 490.

It is further objected that the appellee was disqualified from being a witness on account of religious belief, or the want of it. It appeared from his examination on his *voir dire* that while, as far as he had any fixed belief, he believed in an Overruling Power, and believed if there was such a Being, he would be punished for swearing falsely, either in this world or the next, he further stated that he hardly believed that there was a state of punishment hereafter. We are inclined to think that the witness would be qualified under the rule laid down in the Central Military Tract R. R. Co. v. Rockafellow, 17 Ill. 541, which holds the rule of law to be, "that all are competent who believe in a God, the Creator and Preserver of all things, and that He will punish them if they swear falsely, in this world, or in the next; and a want of such belief will render them incompetent to take an oath, without which no one can testify in a court of justice."

The appellee believed that an Overruling Power, which is God by another name, would punish in this world for swear-

ing falsely. Again, the statutes of this State provide for punishing the crime of perjury, and this is another restraining element against the commission of such a crime. But whether or not the appellee would be competent, under the strict rules of the common law, we hold that under the provisions of Sec. 3, Art. 2, of the Constitution of 1870, that he would be a competent witness irrespective of his religious, or want of religious belief; and the above case, cited from the 17th Ill. Reports, it will be seen, was decided prior to the passage of the Constitution of 1870, but under the Constitution of 1848, which contained no such provision as is found in said Section 3. Sec. 3, Art. 2, of the Constitution, provides that "No person shall be denied any civil or political rights, privilege or capacity on account of his religious opinions," etc. It will be seen by the above that it is very comprehensive. It not only saves all the civil and political rights of the citizen as against any religious opinion, but "privilege and capacity." Now, it can not be denied that the right to testify is a privilege, especially when the party is called to testify in his own behalf, and which he would be allowed to do save for religious opinions. It is also a capacity in which generally the citizen may act, and according to the Constitution he can not lose by reason of his religious opinions.

The above section is a substantial copy of the Constitution of the State of Virginia, which provides that "All men shall be free to profess, and, by argument, maintain their opinions in matters of religion; and the same shall in no wise affect, diminish or enlarge their civil capacities." Under this Constitution, the Supreme Court of the State of Virginia held that no witness could be excluded from testifying on account of his religious belief or unbelief. Peary v. The Commonwealth, 3 Grat. 632. So, we think, since the adoption of the Constitution of 1870, the rule of law disqualifying witnesses on account of religious opinions has been entirely changed. The penalties denounced by law against the crime of perjury, and the innate moral principles of man, and the inborn sense of right and wrong, are now regarded such a sufficient guarantee against false swearing as to admit witnesses to testify, leaving

it to courts and juries to determine the weight proper to be given to their evidence. Under the common law as held formerly by our Supreme Court, no man could be called in a court of justice to testify unless he believed in a God, who would punish for such crimes, either here or hereafter. Fear of Divine punishment seemed to be thought the only effective restraint against the crime of perjury, and yet the same law prescribed that no witness should be qualified to testify in a case where he was a party, or had the slightest pecuniary interest in the result of the suit. The policy of such rules has long been doubted by many wise jurists and legislators. The last mentioned rule has been changed by our Legislature for some years, with happy results, and almost universal approval, following the change of the former rule, as we understand it, by the Constitution of 1870. It was aimed, as we think, by the constitutional convention, to firmly establish all men in this State, without regard to their religious beliefs, in the full enjoyment of their civil rights, privileges and capacities, including the right to testify, beyond the power even of the Legislature to change.

We therefore hold that the court below committed no error in allowing appellee to testify regardless of his religious belief.

The judgment of the court below is affirmed.

*Judgment affirmed.*